JOHN WEDIG ET AL. *v.* FRANK BRINSTER ET AL.
JOHN WEDIG ET AL. *v.* H. CASHEN MITCHELL
(2264)
(2265)

HULL, DUPONT and BORDEN, Js.

Argued October 14—decision released December 27, 1983

*K. Wynne Bohonnon,* with whom were *R. William Bohonnon* and, on the brief, *David M. Bohonnon,* for the appellants-appellees (defendant and third party defendant Brinister et al.).

*Roger Sullivan,* with whom, on the brief, was *Robert Mercer-Falkoff,* for the appellees-appellants (plaintiffs).

*Marshall N. Dudley,* for the appellant-appellee (defendant and third party plaintiff Mitchell).

HULL, J. These actions tried together are for fraudulent misrepresentation arising out of the sale of a house at Sachem's Head in Guilford. The house's septic tank overflow was piped directly into Long Island Sound. The trial court found for the plaintiffs against the defendants Frank and Charlotte Brinster and awarded them $12,068.69 in compensatory damages and $10,000 in reasonable attorney's fees. The court found no consequential damages, and it dismissed the suit against the defendant Mitchell (Brinsters' agent), holding that it was barred by General Statutes § 52-584. The Brinsters have appealed, challenging the trial court's rulings against them. The defendant Mitchell appeals from the court's finding that he made false and misleading statements to the plaintiffs and from the trial court's failure to rule on Mitchell's cross claim against the Brinsters for breach of contract.[1] In their cross appeal, the plaintiffs attack the court's determination that General Statutes § 52-584 barred their cause of action against Mitchell, and various other rulings.[2]

The defendants Brinster claim the following errors: (1) the allowance of amendments to the complaint; (2) the finding of jurisdiction under the long arm statute, General Statutes § 52-59b; (3) the court's finding the defendants Brinster liable by reason of fraudulent concealment or nondisclosure of material facts relevant to the sale of their house; (4) the awarding of punitive damages consisting of attorney's fees; and (5) the allowance of testimony of the plaintiffs' attorney as to attorney's fees without his withdrawal from the case.

The defendant Mitchell claims the following errors: (1) the finding that statements by Mitchell were false and were misrepresentations of material facts upon

---

[1] These appeals, originally filed in the Supreme Court, were transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] A motion for consolidation of these appeals was granted on December 9, 1980.

which the plaintiffs relied; (2) the court's failure to consider Mitchell's third party plaintiff complaint against the third party defendants Brinster.

The court found the following facts: Charlotte and Frank Brinster owned a home in Guilford. When the house was purchased, the sewage system consisted of a 250 gallon septic tank and a four inch overflow pipe that drained into Long Island Sound. The drainage pipe was visible at certain times depending on the level of the tide.

In April of 1971, Elizabeth Adams, the director of health for the town of Guilford, mailed a questionnaire to the Brinsters by which she sought information concerning the means of sewage disposal discharged from their property, and in which she advised them that it was uncertain whether sanitary town sewers would be available, and that proper disposal of waste water must be accomplished insofar as is possible. Frank Brinster, in returning the completed questionnaire, confirmed to the director of health that sewage waste water was discharged from the property directly into Long Island Sound. On May 8, 1971, the director of health acknowledged the returned questionnaire and advised that the sewage disposal system did not conform to existing code regulations and that remedial measures should be implemented to obviate issuance to him of a formal order to abate a sewage nuisance.

The Brinsters replied to the director of health that they were on top of a rock ledge, making it impossible to conform exactly to the aforesaid regulations, and stating their belief that the ultimate solution was for town sewers. A list of approved sanitary engineers was also requested by them. In answer, the Guilford town engineer on June 14, 1971, furnished the Brinsters with a list of approved sanitary engineers and confirmed that sewers would not be available. Thereafter, in April of

1973, the director of health further advised the Brinsters that the state department of environmental protection was overseeing the problem, that it would require of them an individual engineering proposal and, further, that the department of environmental protection could be expected to enforce elimination of sewage pollution. On May 14, 1973, the director of health again wrote to the Brinsters that the department of environmental protection required correction of the sewage discharge sooner than any sewers might be available. The Brinsters took no steps to alter or remedy the direct discharge of sewage waters from their property into Long Island Sound.

On September 23, 1974, the Brinsters engaged H. Cashen Mitchell as their exclusive agent to sell their home. At no time did the Brinsters disclose their communications with the town to Mitchell. In fact, they informed him on two separate occasions that the sewage system was working satisfactorily and caused no problem. On September 30, 1974, the Brinsters moved to North Carolina. Several months later, the Wedigs inspected the property in anticipation of purchasing it. The plaintiffs were never informed of the sewage system problem. In February of 1975, while inspecting the property, Mrs. Wedig was informed by Mitchell that everything was "okay" about the septic system.

In March of 1975, the Brinsters and the Wedigs met to discuss financial details of the sale. During the meeting, the Brinsters failed to inform the Wedigs about the town health code violations or that the department of environmental protection was involved. The Wedigs entered into a contract for sale and at the closing on April 15, 1975, Mr. Wedig was informed by Mitchell, who was present in order to collect his commission and to bring the key to the house, that the sewage system

was "okay." Had the Wedigs known the true nature of the septic situation, they would not have bought the property.

On May 19, 1975, the department of environmental protection issued an order to the Brinsters to abate the nuisance. They forwarded the order to the plaintiffs. This is the first time that the plaintiffs knew of the problem. In order to conform the system to the order, excavation and blasting were required. As a result of the blasting, the house became infested with water rats. Furthermore, a new sea wall had to be erected with a fence placed around it.

On December 2, 1976, the plaintiffs filed suit against the Brinsters. On April 7, 1978, the plaintiffs instituted suit against the defendant Mitchell. Mitchell impleaded the Brinsters as third-party defendants. The actions were consolidated for trial.

I

ISSUES RAISED BY THE DEFENDANTS BRINSTER

A

The Allowance of Amendments to the Complaint

On April 7, 1978, well before trial, the plaintiffs moved to amend their complaint. The amendment was permitted over the defendants' objection.

The amendment was purely technical and made no substantive change in the complaint. The Brinsters could show no prejudice at the trial or at oral argument on the appeal. "Our courts have followed a liberal policy relative to permitting amendments to pleadings after the expiration of the time during which . . . amendments may be filed as a matter of right." *Smith* v. *New Haven,* 144 Conn. 126, 132, 127 A.2d 829 (1956). "Such

a ruling can be reversed only on a clear showing of abuse of discretion." *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979).

We find no abuse of discretion in the court's action.

## B

### The Finding of Jurisdiction Under the Long Arm Statute, General Statutes § 52-59b

The Brinsters argue that there was no proper in personam service under General Statutes § 52-57 (a). Since the finding of jurisdiction by the court was not based on that statute, the Brinsters are tilting at a nonexistent windmill.

The court found jurisdiction based on General Statutes § 52-59b (a) (2) which provides that a court may exercise personal jurisdiction over any nonresident who in person or through an agent commits a tortious act within the state. The complaint states a cause of action for fraudulent misrepresentation. When jurisdiction is based on a long arm statute, there must be some relationship between the defendant and the state asserting jurisdiction. All that is required is sufficient contact to make it reasonable and just, according to our traditional notions of fair play and substantial justice, to permit the state to enforce the obligations incurred there. *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); *Anderson* v. *Schibi,* 33 Conn. Sup. 562, 565, 364 A.2d 853 (1976). The notice required is that "reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action." *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1949).

The Brinsters concede that they received registered letter notice of the suit. The service requirements of

General Statutes § 52-59b (c) were precisely complied with. The court properly found jurisdiction under the long arm statute.

## C

### The Finding of the Defendants' Liability by Reason of Fraudulent Concealment or Nondisclosure of Material Facts Relevant to the Sale of Their Home

The Brinsters did not disclose to Mitchell any of the communications with the director of health or the involvement or concern of the department of environmental protection. Mitchell told the Wedigs on two occasions that the system was okay. The Brinsters concede in their brief that Mitchell was their agent and that Mitchell's words are imputed to them. When the Brinsters met with the Wedigs in March, 1975, they were silent on the subject of the septic system.

The court found the Brinsters liable for breach of an affirmative duty to disclose material facts about the status of the sewer system and for misrepresentations of material fact through their agent.

Concerning fraudulent nondisclosure, the court found that the Brinsters had an affirmative duty to disclose the septic system problems. In *Franchey* v. *Hannes,* 152 Conn. 372, 379, 207 A.2d 268 (1965), the court held that once a vendor assumed to speak, "he must make a full and fair disclosure as to the matters about which he assumes to speak." He must then avoid a deliberate nondisclosure. Id. To constitute fraud by nondisclosure or suppression, "there must be a failure to disclose known facts and . . . a request or an occasion or a circumstance which imposes a duty to speak." *Duksa* v. *Middletown,* 173 Conn. 124, 127, 376 A.2d 1099 (1977); *Ceferatti* v. *Boisvert,* 137 Conn. 280, 283, 77 A.2d 82 (1950). This duty arises when a vendor of

property conceals from the vendee a material fact affecting it. A vendor of property may not do anything to conceal from the vendee a material fact affecting it, or say or do anything to divert or forestall an intended inquiry by him, or deliberately hide defects, for, in so doing, he is not merely remaining silent, but, is taking active steps to mislead. *Egan* v. *Hudson Nut Products, Inc.,* 142 Conn. 344, 348, 114 A.2d 213 (1955); *Gayne* v. *Smith,* 104 Conn. 650, 652, 134 A. 622 (1926). "[T]he nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." *Egan* v. *Hudson Nut Products, Inc.,* supra, 347–48.[3]

The present case is a classic example of a hidden defect or "guilty knowledge" type of case. The nub of the case is that the system was not okay or free of problems. The Brinsters were waiting for the regulatory axe to fall.

The Brinsters did not make a full and fair disclosure about the septic systems. The plaintiffs' request for information about the sewage system imposed a duty to tell the whole truth, not a half-truth. By deliberately hiding the essential facts about the illegality of the system, the Brinsters were taking actual steps to mislead.[4]

Concerning fraudulent misrepresentation, the case of *Miller* v. *Appleby,* 183 Conn. 51, 438 A.2d 811 (1981), is remarkably similar. In that case, the Millers contracted to buy a duplex house owned by the defendant

---

[3] A compatible formulation of the rules concerning liability for nondisclosure can be found in the Restatement (Second), Torts § 552.

[4] "A statement that is partial or incomplete may be a misrepresentation because it is misleading, when it purports to tell the whole truth and does not." Restatement (Second), Torts § 551, comment on clause (b) p. 121.

Appleby. The husband, Donald Miller, was concerned about the location and adequacy of the septic system because of problems with a prior home.

The plaintiff and the defendant first discussed the septic system at the closing. The defendant told the plaintiffs that the property had "a large capacity 1200 gallon tank which should be very suitable for a two-family home." Id., 53. He also said that the leaching field was "under the blacktop." The plaintiffs believed that the leaching field was located on the property they purchased. Actually, the leaching field was "under the blacktop" on abutting property owned by the defendant.

After the closing, the septic system failed and the Millers were ordered by the town of Waterford to repair the system. Under applicable regulations, it proved impossible to install the necessary system on that lot. The Supreme Court upheld the trial court's imposing liability on the basis of fraudulent misrepresentation.

The misstatements in *Miller* ("suitable") and in the present case ("okay") were very much alike. Both owners knew they had grave problems with their septic systems. The Miller problem proved unsolvable. The Wedigs' problems proved to be monumental.

Concerning misrepresentations of material fact, the court in *Miller* v. *Appleby,* supra, 54–55, held: "The essential elements for an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury."

The court found that all of the essential elements of fraud had been proved by the plaintiffs. The Brinsters

appointed Mitchell as their agent to sell the house. During their out of state absence, they understood that he would stand in their shoes as to any details or questions about the house. Their telling Mitchell that the system worked satisfactorily and caused no problem was a material false representation made as a statement of fact which he unwittingly transmitted to the plaintiffs by saying that the system was okay. It flies in the face of reality to say that it was not untrue because it worked fine as long as the sewage ran into Long Island Sound. There was a problem and it was far from being okay as the Brinsters were under heavy fire from regulatory authorities to replace the system. That replacement would be at great cost because of the rocky ledge involved.

That the plaintiffs relied upon Mitchell's representations in buying the property is abundantly clear. They had seen the discharge pipe running into the sound. Their concern was shown by inquiries concerning the septic system to Mitchell by both Mr. and Mrs. Wedig. The plaintiffs, therefore, did act, in reliance on the misrepresentation, to their injury. They had to build a completely new system with all of the inconvenience and expense which ensued.

The Brinsters' lengthy brief mostly seeks a retrial of the facts. As to both bases of liability for fraud, the decision of the trial court will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Miller* v. *Appleby,* supra, 55. We hold that there was ample evidence to support the court's conclusion on both aspects of liability. The court's conclusion was not clearly erroneous.

## D

### The Awarding of Punitive Damages Consisting of Attorney's Fees

The court awarded reasonable attorney's fees in the amount of $10,000. The Brinsters challenge that award. ·

The plaintiffs also contest the award of $10,000 attorney's fees, claiming in their cross appeal that the award should have been in the amount of $24,401.05, the amount incurred by them.

Punitive or exemplary damages in a fraud case include attorney's fees. *Brower* v. *Perkins,* 135 Conn. 675, 681, 68 A.2d 146 (1949). The plantiffs properly introduced evidence to establish this damage.[5] *Chykirda* v. *Yanush,* 131 Conn. 565, 568, 41 A.2d 449 (1945). As stated in *Chykirda* v. *Yanush,* supra, "[p]unitive damages are limited to the costs of litigation less taxable costs, but within that limitation the extent to which they are awarded is in the discretion of the trier. *Bennett* v. *Gibbons,* 55 Conn. 450, 452, 12 Atl. 99 [1887]; *Hanna* v. *Sweeney,* 78 Conn. 492, 494, 62 Atl. 785 [1906]."

The defendants do not contest the amount of attorney's fees. They merely reiterate their denial of fraudulent misrepresentation. Their objection to attorney's fees falls with the court's finding of such fraudulent misrepresentation.

As to the plaintiffs' argument that the court erred in not granting $24,401.05 damages, the award of

---

[5] For a different evidential stance in an attorney's fees case arising out of contract rather than as an element of damages, see *Storm Associates, Inc.* v. *Baumgold,* 186 Conn. 237, 246, 440 A.2d 306 (1982) (contract clause providing for reimbursement of "incurred" fees), and *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 679, 443 A.2d 486 (1982) (contract providing for reasonable attorney's fees); see also *Alaimo* v. *Royer,* 188 Conn. 36, 42-43, 448 A.2d 207 (1982) (exemplary and punitive damages are the same).

$10,000 damages was based on the evidence and was well within the court's discretion. *Chykirda* v. *Yanush,* supra. A trial court's exercise of discretion will not be interfered with unless the exercise was a manifest abuse of discretion. *Sturman* v. *Socha,* 191 Conn. 1, 7, 463 A.2d 527 (1983). This court cannot retry the facts or reexamine the credibility of witnesses. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). The trial court's findings were not clearly erroneous.

## II

### ISSUES RAISED BY THE DEFENDANT AND THIRD PARTY PLAINTIFF MITCHELL

The defendant Mitchell claims error both in the court's finding that he, as agent, made material misrepresentations and in the court's failure to determine the issues on the third party complaint against the defendants Brinster. Since the court rendered judgment for the defendant Mitchell, he is not aggrieved and thus has no standing to appeal. See *Kulmacz* v. *Kulmacz,* 177 Conn. 410, 412, 418 A.2d 76 (1979).

## III

### ISSUES RAISED BY THE PLAINTIFFS

### A

#### The Court's Conclusion that the Two Year Limitation Period in General Statutes § 52-584 Barred the Action Against Mitchell

The court held that General Statutes § 52-584 is a bar to the action against Mitchell. General Statutes § 52-584 provides as follows: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or

sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

The court found that the action for misrepresentations made by Mitchell on April 15, 1975, even though brought within the three year period specified in § 52-577, was barred by the two year limitation in § 52-584. General Statutes § 52-577 provides as follows: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." "The three-year Statute of Limitations, § 52-577, is applicable to all tort actions other than those actions carved out of § 52-577 and enumerated in § 52-584 or another section." *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 107, 285 A.2d 330 (1971); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 491, 234 A.2d 825 (1967).

In *Bordman* v. *Burlingame,* 123 Conn. 646, 651, 197 A. 761 (1938), the court held that the tortious act of procuring the plaintiff's signature to consent to remain in the defendants' mental hospital by false and fraudulent representations was based on fraud and that the case came squarely within General Statutes § 6006, a predecessor of § 52-577. In *Rosenblatt* v. *Berman,* 143 Conn. 31, 39, 119 A.2d 118 (1955), the court stated: "The complaint alleged a conspiracy to cheat and defraud the plaintiff. It sounded in tort. The applicable statute is § 8316 [a predecessor of § 52-577], which limits the bringing of such an action to three years."

Here, the revised complaint in the first count alleges untrue statements by Mitchell. In the second count, the

complaint states: "the statements made by the defendant . . . were false and misleading and were made negligently and recklessly by the defendant." To resolve the matter, the court looks not only to the complaint, but also to the proof offered in pursuance thereof. *Collens* v. *New Canaan Water Co.,* supra, 491. Concerning Mitchell, the court stated: "Those statements imparted that the sewage disposal system was satisfactory at a time when it was not. They are, therefore, misrepresentations of material fact which are imputed to the Brinsters and the court so finds."

The complaint and proof clearly sounded in the tort of fraudulent misrepresentation which is governed by the three year statute of limitations period for general torts.

There is, therefore, error in the judgment in favor of H. Cashen Mitchell. In view of the necessary retrial of the action by the Wedigs against Mitchell, the trial court's judgment for the Brinsters in Mitchell's third party action against them must also be set aside.

B

The Failure of the Court to Award Consequential Damages and Interest on Damages

Although the court stated that it awarded no consequential damages, it did award the plaintiffs $12,068.69 representing the cost for the repair of the septic system. The question of damages beyond this amount is for the trial court to decide. The credibility of witnesses is the sole province of the trial court. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391–92, 441 A.2d 629 (1982).

Although interest may be included in an award of punitive damages, allowance of it remains within the discretion of the court. *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 406, 363 A.2d 160 (1975).

There is error on the appeal of the plaintiffs from the judgment for the defendant Mitchell, the judgment for

him is set aside and a new trial is ordered; there is error on the defendant Mitchell's appeal and the judgment for the third party defendants Brinster in Mitchell's third party action is set aside.

In this opinion the other judges concurred.