[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By amended complaint dated March 10, 1993, the plaintiff, in counts one through four, sought damages against George and Joan Melnick who were the sellers of a residential property to the plaintiff in 1988. The plaintiff claimed fraudulent and negligent concealment, and nondisclosure of defective conditions, breach of CT Page 5352 contract, and CUTPA violations.
In counts five through eight the plaintiff claims the defendant, Brian Realty, Inc. is liable under theories of agency and respondeat superior claiming that Joan Melnick was an employee or agent of Brian Realty, Inc. in addition to being the seller of the property.
The original complaint cited as defendants the Melnicks, Donald A. Clerke, (a professional engineer hired by the plaintiff to inspect the premises), and Victoria Kaplan, d.b.a. Brian Realty.
Subsequently the complaint was amended to change the name of the defendant Victoria Kaplan, d.b.a. to Realty World-Brian Realty, Inc. (Brian Realty).
Also subsequently, the suit was withdrawn as to Donald A. Clerke after settlement in the amount of $1500. It was also later withdrawn as to George and Joan Melnick following their discharge in bankruptcy, thus the only remaining defendant is Brian Realty.
 I Fraudulent Misrepresentation, Concealment and Nondisclosure
The essential elements of an action based on fraud are:
 1. A false representation was made as a statement of fact.
 2. The statement was untrue and known to be untrue by the party making it.
 3. It was made to induce the other party to act on it; and
 4. The latter did so act on it to his or her injury.
Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515
(1970); Maturo v. Gerard, 196 Conn. 584, 587 (1985).
Fraud must be proven by clear and convincing evidence. Regov. Connecticut Insurance Placement Facility, 22 Conn. App. 428, 430
(1990). CT Page 5353
Fraud by nondisclosure occurs when there is a failure to disclose known facts under circumstances which impose a duty to do so. Duksa v. Middletown, 173 Conn. 124, 127 (1977). Egan v.Hudson Nut Products, Inc., 142 Conn. 344, 348 (1955). It requires an intent to deliberately conceal a defect to induce or influence a transaction. Wedig v. Brinster, 1 Conn. App. 123, 130-131
(1983).
The Court finds that the plaintiff has failed to prove fraudulent misrepresentation, nondisclosure or concealment for the following reasons:
The Melnicks purchased a parcel of land in 1978 which had two separate dwellings, one of which being the house in question. This house had been built in 1948 and had been used as a seasonal cottage or lodge. It required extensive work to turn it into a year round residence in 1984 when the Melnicks decided to make the necessary renovations for that purpose. They intended to make the property habitable for year round use and to move into the house with their family once that work was accomplished. Various building permits were obtained and the following improvements were made: a well was installed with a submersible water pump, a septic system installed, plumbing was installed, electrical service was upgraded and the system rewired, a hot water heater was installed, a heating system including an oil fired hot air system was installed, the chimney was repaired and the second floor divided into three rooms.
The local building inspector, Gene Bolles, visited the site regularly to inspect the work and in December 1984 viewed the completed project, which included the second floor. In January 1985, the Melnicks moved into the renovated home. Mr. and Mrs. Melnick occupied a bedroom on the first floor, the second floor bedrooms were occupied by two adult sons and the third upstairs room was used as an office. (An adult daughter occupied a bedroom on the first floor).
Bolles issued a certificate of occupancy on December 27, 1984 "approved for 4 room single family dwelling." He testified that the second floor had insufficient headroom to be habitable.
Mrs. Melnick denied ever being told by Bolles that the second floor was not habitable. He inspected the work in progress regularly and would have seen the wiring and heating work, the type CT Page 5354 of construction and the layout of the rooms. Despite that, the C.O. does not state it is a partial C.O. only, or that the use of the second floor for living is prohibited. When Mrs. Melnick received the C.O. in the mail, she assumed it indicated a four bedroom residence, as that was, in fact, what the house contained.
On this issue, the defendant presented testimony from Lawrence S. Tryon, a very credible witness and expert in the field of building codes, having chaired the last three State of Connecticut Building Code Revision Committees. The Court accepts his testimony that the second floor of this property is habitable, that it is absolutely safe for residential use and that it complied with the 1984 building code requirements, including height, light, load and safety requirements.
When the Melnicks decided to sell this home in 1988, they listed it with Brian Realty. Mrs. Melnick was then employed as a real estate sales person on a part time basis for Brian Realty. The claim by the plaintiff and her husband that they became aware of the property being for sale through a newspaper ad in the Journal Inquirer on a Saturday in October 1988 was unproven and uncorroborated. It does not appear that the property was advertised in a newspaper, but there was a sign on the premises indicating Brian Realty as the agent. In any event, the Petrones were looking for a home at the time and were working with their own real estate agent, Shelly Mazzoli, a Century 21 agent. Mazzoli made arrangements for the Petrones to see the property. Mazzoli had a copy of the M.L.S. listing describing the house as a seven room cape. The Petrones, being satisfied with the house, entered into a contract to purchase it. They were assisted by Mazzoli in drafting and reviewing the contract. (Plaintiff's Exhibits A and B).
Among the terms of the agreement are the following relevant paragraphs:
(9) NO ORAL REPRESENTATIONS: All of the terms and conditions of this Agreement between the parties hereto are stated herein and no representations or inducements have been made to the BUYER by the SELLER or the real estate broker(s) as to the character, quality, use, zoning, value, condition, occupancy, or other matters relating to the property.
(10) The BUYER acknowledges that he has had the opportunity to make a full and complete inspection of the property, to the extent that CT Page 5355 he desires. If the BUYER has elected to make a less thorough Inspection, he waives any right that he may have had to object to any defects in the property that would have been disclosed by full and complete inspection. The BUYER agrees to accept the property in "as is" condition as of the date of this Agreement.
The earlier of the two agreements, dated October 18, 1988 (Plaintiff's exhibit A), contained an addendum which provided, in part, as follows:
 This agreement is contingent upon an inspection and report by a licensed engineer or recognized home inspection business satisfactory to Buyer that the buildings on the Property contain no major defects to the electrical, plumbing and heating systems, or in the basic structure of the buildings including safety measures.
The Petrones retained Donald A. Clerke, a licensed engineer, to inspect the property. Clerke inspected the premises on September 23, 1988 and submitted his report to Mrs. Petrone (plaintiff's exhibit C). That report stated the house was in fair condition, that it probably had no insulation in the walls, that its thermal efficiency was probably poor, and the floors were in poor condition.
Mrs. Petrone testified that she called Mrs. Melnick to inquire whether there was wall insulation and that Melnick told her to cut into the wall and look. Petrone claims that Melnick also told her the house was insulated. The Court does not find this unsubstantiated statement was proven to be made. (Melnick denied telling Petrone there was insulation in the walls). Petrone had the report of a professional engineer and also had an inspection or appraisal report prepared by the McCue Mortgage Company (Plaintiff's exhibit D) indicating that renovations were done with material of low cost quality and that some workmanship was unprofessional. That report also stated that the existence of wall insulation was unknown. It appears to the Court more likely that Petrone was satisfied with the house as it appeared to her visually, and that those areas of perhaps substandard construction and other shortcomings which were set out in the inspection reports alluded to were acceptable to her.
The testimony of Robert Dawson, an expert in the field of CT Page 5356 building construction, and the report he prepared (Plaintiff's exhibit H) which pointed out areas of structure and workmanship which he concluded were substandard was not persuasive. This was far from a new home, most of the workmanship was open and visible to the plaintiff and her engineer. (The joists and supporting members for the second floor being the most notable exception). As discussed earlier the Court credits Lawrence Tryon's testimony that the second floor was absolutely safe for residential use, as was corroborated by the fact that two adult members of the Melnick family lived there for several years. It should also be noted that on the issue of proving damages, Dawson's testimony that it would cost $50.00 per square foot to correct all the structural defects he claims existed was so lacking in detail it has very little probative value. Thus, even if the Court had found liability on the defendants part, damages could not be determined with sufficient probability to be assessed based on his testimony.
Similarly, the testimony of Allen Tracy, also expert in the field of civil engineering, that he estimated a 10% overstress on the second floor, was not persuasive. Significantly he also stated the house was habitable.
The plaintiff asks the Court to draw an adverse inference from the defendant's failure to call Mr. Melnick as a witness. Mr. Melnick made no representations of any kind to the plaintiff. He was present at the first inspection by Mrs. Petrone, but said nothing. With the exception of the second floor support and perhaps the insulation, the other conditions were open and observable. The manner of construction of the second floor was significant only if it were unsafe or had a hidden or known defect. Since it did not, Mr. Melnick is not a witness who would naturally be called. Assuming that he did some of the work himself, once the joists were exposed by the Petrones when they began to renovate, the type of construction was also apparent and obvious.
The plaintiff has failed to prove misrepresentation, concealment or nondisclosure, either fraudulently or negligently.
Also, the plaintiff placed her primary reliance on her own real estate agent (Mazzoli), and her engineer (Clerke) and signed a contract to purchase containing language to that effect. That agreement was signed by the plaintiff at her own agent's office. The Melnick's were not present at that meeting in Mazzoli's office and the plaintiff testified she was aware she could not rely on any oral representation of the sellers. CT Page 5357
Agency
At the time this property was sold Mrs. Melnick was employed part-time by Brian Realty. General Statutes § 20-312a would make Brian Realty liable under a theory of respondeat superior for the tortious conduct of its employee. Although Mrs. Melnick was "wearing two hats" at the time, one being that of seller of the property, she was also acting to some degree as the agent of Brian Realty. The property had a Brian Realty for sale sign on it, Brian Realty was the listing agent in the M.L.S. listing and both Brian Realty and Mrs. Melnick shared a part of the commission (Century 21 — Mazzoli's firm, also received a portion of the commission). Brian Realty would, under these circumstances, have liability for the tortious conduct of its employee, Joan Melnick, if Melnick had acted fraudulently or negligently.
However, because Melnick did not act in said manner judgment shall enter for the defendant Realty World-Brian Realty in counts five and six.
As to count seven, (Breach of Contract), Brian Realty was not a party to the contract between Petrone and the Melnicks. Even if a breach of contract was proven, (which was not done), Brian Realty cannot be liable under this count.
As to count eight, (CUTPA), it follows from the foregoing that the plaintiff cannot prevail on this count.
Judgment for the defendant Realty World-Brian Realty in counts five through eight.
Klaczak, J.