[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12805
The plaintiffs in the present action, Campion Ambulance Service, Inc. and Fitzgerald Ambulance Service, Inc. (Campion), provide emergency medical services for the Waterbury area under City contract. The defendant Medstar, Inc. (Medstar) also provides such emergency medical services in Waterbury and is a competitor of the plaintiffs. The other defendants are C.A.G. Associates, Inc., Chris Gentile, Garrett F, Casey Jr., Raymond J. Manzelli, David J. Byrne, and William Horrigan.
There is no dispute that this litigation arises out of a hearing before the Office of Emergency Medical Services (OEMS) on the plaintiffs' and Medstar's competing applications seeking designation as the "primary service area responder" for the Waterbury area. The OEMS is an office of the Department of Health Services and is responsible for regulating emergency medical services statewide. The parties agree that at the initiation of the hearing defendant Gentile was the director of OEMS and that he served as technical advisor for the OEMS hearing officer, Christine Spak (Spak). They also agree that the final decision, issued on December 26, 1989, reduced Campion's service area for the Waterbury area, which had constituted previously of two-thirds of the Waterbury area, to one-half, and Medstar's share of the Waterbury area was increased to one-half.
The plaintiffs have made a showing that while the applications were being considered, Gentile, the technical advisor for the hearing officer, engaged in business negotiations with defendants Casey, Manzelli, Byrne, and Horrigan, who were all principles of Medstar. They have also shown that following the hearing, at which Gentile cross-examined witnesses and developed evidence, Gentile resigned as director of OEMS and created the consulting firm CAG Enterprises with defendants Casey, Manzelli, Byrne, and Horrigan.
The gravamen of the plaintiffs' complaint is that Gentile influenced the hearing officer's decision for the benefit of Medstar and also engaged in ex-parte communications with Medstar during the hearing. The plaintiffs' complaint sounds in four counts: violations of the Connecticut Unfair Trade Practices Act, ("CUTPA"), General Statutes § 42-110a, et seq.; tortious interference with business expectancies, tortious interference with governmental process, and fraudulent nondisclosure. CT Page 12806
The defendants have filed essentially identical motions for summary judgment.
 Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.
(Citations omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp. , 229 Conn. 99, 105-06, 639 A.2d 507
(1994). "In deciding a motion for summary judgment the trial court is limited to considering the pleadings, affidavits, and other documentary proof submitted by the parties. Practice Book § 384." Orticelli v. Powers, 197 Conn. 9, 15, 495 A.2d 1023
(1985).
I. Statute of Limitations — Addressed to all counts
The defendants argue that the motion for summary judgment should be granted against the plaintiffs on all counts because the plaintiffs' claims are barred by the three year statute of limitations applicable to the CUTPA claims, General Statutes § 42-110g(f), and the three year statute of limitations applicable to tort claims under General Statutes § 52-577. The defendants have established that the evidentiary hearing on the applications ended on May 23, 1989, and they claim this is the date at which Gentile's role as a technical advisor ended. Accordingly, they argue that any violation of CUTPA, or any tortious conduct arising out of Gentile's role in the hearing could not have occurred after May 23, 1989. Since the plaintiffs' action was not instituted until September 3, 1992, the defendants CT Page 12807 argue the plaintiffs' claims are therefore barred.
The plaintiffs argue that the Gentile's nondisclosure of his business dealings and ex-parte communications were not completed until Spak issued her proposed decisions on September 5, 1989, when, a trier might find, Gentile failed to disclose his business arrangements with her during a conversation in which he indicated that he was leaving public office. They point out that Section 4-787 of the General Statutes prohibits ex parte communications with agency officials while the final decision is pending before that agency. The plaintiffs thus argue that the statute did not begin to run until the November 26, 1989 final decision by OEMS. Additionally, the plaintiffs also contend that the defendants' failure to disclose their business dealings tolled the statutes of limitations for the CUTPA and tort claims until the plaintiffs became aware of the defendants' dealings in June, 1991. The plaintiffs also contend the defendants' actions constituted a continuing course of conduct. The plaintiffs point out that the deposition testimony of Spak indicates Gentile had some contact with Spak regarding the applications after the close of the evidentiary hearing.
The court finds the date the statute of limitations began to run presents a material question of fact in dispute. A trier of fact may find Gentile's ex-parte communications and improper influence extended over the administrative proceedings beyond May, 1989. Those dates have not been clearly demonstrated beyond dispute. Accordingly, the motion for summary judgment is denied as to the statute of limitations issue.
II. Count one
In the first count of the revised complaint, the plaintiffs allege that the defendants' ex-parte communications and actions constituted a CUTPA violation. The defendants argue in their motion for summary judgment that the plaintiffs have not alleged or made a showing of a proper CUTPA claim because the defendants were not engaged in a trade or commerce as required by General Statutes § 42-110b, and that the activities of the defendants are exempted as official actions under General Statutes § 42-110c.[1] Additionally, the defendants argue that no consumer commercial relationship existed between the parties as is required by CUTPA. For these reasons, the defendants argue that the motion for summary judgment be granted as to the first count. CT Page 12808
The plaintiffs argue that CUTPA applies to Gentile and Medstar's conduct, because they were involved in "ambulance and paramedic services and consulting services" which is trade or commerce under CUTPA. The plaintiffs further argue that the exemption in General Statutes § 42-110c does not apply to this action, because Gentile's actions were unauthorized and illegal business dealings with the other defendants and were in excess of his authority.
A court should employ the following criteria when determining whether a CUTPA violation exists: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (internal quotation marks omitted) McLaughlinFord, Inc. v. Ford Motor Co., 192 Conn. 558, 568, 473 A.2d 1185
(1984).
The court holds that the motion for summary judgment should be denied as to the first count. The plaintiff has sufficiently alleged and made a showing of a CUTPA claim against the defendants. The conduct involved in the complaint involves the defendants Gentile and Medstar, concerning an application to provide emergency medical services in the Waterbury area. Providing emergency ambulance service is a trade or commerce under CUTPA. Abair v. Ambulance Service of Manchester, Superior Court, Judicial District of Hartford/New Britain at Hartford (September 1, 1994, Corradino, J.). The conduct which a trier of fact may find was designed to increase Medstar's market share in the Waterbury market, and was in trade or commerce. Pursuing contracts with the City of Waterbury was part of the trade or commerce of Medstar. The court finds the plaintiff has plead and made a showing of a CUTPA claim to overcome a motion for summary judgment.
The defendant also argued that the plaintiff failed to allege that a consumer relationship existed between the two parties. However, the Supreme Court recently "stated in no uncertain terms that CUTPA imposes no requirement of a consumer relationship. InMcLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558,473 A.2d 1185 (1984), the court held that CUTPA is not limited to conduct CT Page 12809 involving consumer injury and that a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury." Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480,496, ___ A.2d ___ (1995). Here the plaintiffs are competitors of the defendants, and the motion as to Count One is denied.
III. Count Two
The plaintiffs allege in the second count that the defendants tortiously interfered with the plaintiff's business expectancy. The defendants claim that the plaintiffs have not successfully made out such an action due to their failure to allege or make a showing that Gentile interfered with any of the plaintiffs' business or contract relationships. They also claim that the plaintiffs have failed to assert any damage resulting from the alleged tortious interference. The defendants claim in essence that any loss suffered by the plaintiffs resulted from the final decision of the OEMS.
The plaintiffs, however, claim that the defendants improperly interfered with their expectancy of the Waterbury emergency services contract by improper means, such as ex-parte communications and improper influence over the OEMS decision resulting in a diminished share of the City contracts for the service area. In addition, the plaintiffs argue that a breach of contract or contractual relationship is not a necessary predicate to a claim of tortious interference with a business expectancy. The plaintiffs argue that they have properly alleged and demonstrated through affidavits and evidence that they have suffered actual loss.
"In order to succeed on a claim of tortious interference with business expectancies, . . . the plaintiff must do more than show that the defendant's actions proximately caused a loss to the plaintiff's business. A cause of action for tortious interference with a business expectancy requires proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. "[L]iability in tort is imposed only if the defendant maliciously or deliberately interfered with a competitor's business expectation." Sportsmen'sBoating Corp. v. Hensley, 192 Conn. 747, 754, 755, 474 A.2d 780
(1984).
The court finds the plaintiffs have adequately pled and shown CT Page 12810 the elements of tortious interference with business expectancy. The plaintiffs have alleged and made a showing that the defendants deliberately interfered with the plaintiffs' attempt to contract with the City of Waterbury, and that the defendants secretly communicated with each other and acted to deprive the plaintiffs of the opportunity to contract with the city of Waterbury for a particular area. Lastly, the plaintiffs have alleged and shown that they were damaged by the defendants' actions.
When considering this motion for summary judgment, the court should view the evidence in the light most favorable to the plaintiff. Honan v. Greene, 37 Conn. App. 137, 141, ___ A.2d ___ (1995). Viewing the facts in the light most favorable to the plaintiffs, it cannot be said that the defendants are entitled to judgment as a matter of law. The plaintiffs have sufficiently pled and shown the elements of tortious interference with business expectancy and set out facts from which a trier may so conclude. Solomon v. Aberman, 196 Conn. 359, 364, 493 A.2d 193
(1985). Accordingly, the motion for summary judgment is denied as to the second count.
IV. Count Three
The plaintiffs attempt to recover in the third count of the complaint based on a claim of "tortious interference with governmental process." The defendants argue that no cause of action for "tortious interference with government contract" exists in Connecticut and that they are entitled to summary judgment. The plaintiffs do not argue that the cause of action has been recognized previously, but argue that the court has the power to recognize such a cause of action.
The motion for summary judgment is granted as to count three. While the plaintiffs have argued that the court has the power to recognize a claim such as "tortious interference with government process", they have not sufficiently convinced the court that it should recognize such a cause of action, where other remedies as here, are available. See Restatement of Torts 2d, § 874A h (5), page 309.
V. Count Four
In the fourth count, the plaintiffs seek to recover on a theory of fraudulent nondisclosure. The defendants argue that the CT Page 12811 plaintiffs have not properly alleged a claim of fraudulent nondisclosure. The defendants contend that the plaintiffs failed to allege, and there is no showing that the defendants' nondisclosure of activities was "intended or expected to induce the Plaintiffs to enter into or refrain from entering into any transaction."
The plaintiffs claim that they have alleged and shown the required elements of a fraudulent nondisclosure claim. They contend and offer facts to establish that the defendants' actions caused them not to question the propriety of the relationship between two of the defendants, Gentile and Medstar, and that the defendants' communications and illegal business dealings constitute a fraudulent non-disclosure.
A cause of action for fraudulent nondisclosure requires the allegation and a showing that the defendants had a duty of disclosure because of some contractual duty, rule of court, vendor-vendee relationship or the like. Duksa v. Middletown,173 Conn. 124, 127 (1977); Jackson v. Jackson, 2 Conn. App. 179, 194, cert. denied, 194 Conn. 805 (1984). A key element in a fraudulent nondisclosure case is that there be a duty to speak. Jackson v.Jackson, supra, 2 Conn. App. 194. Another element is that the "nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." Wedig v. Brister, 1 Conn. App. 123, 131,469 A.2d 783 (1983), quoting Egan v. Hudson, 142 Conn. 344, 347-48,114 A.2d 213 (1955). See Restatement of Torts 2d, § 525, § 531; Prosser and Keeton on Torts (5th Ed), Chap. 18, § 108, p. 749; and Harper, James Gray, The Law of Torts, Vol. 2, Misrepresentation and nondisclosure, § 713.
The motion for summary judgment is granted as to count four as the plaintiffs have not properly alleged or shown facts required for a claim for fraudulent non-disclosure. The plaintiffs have not alleged or shown that the nondisclosure by a party having a duty to disclose were intended or expected to induce them to enter into or refrain from entering into a transaction. Wedig, supra, 142 Conn. 347-348. The plaintiffs do allege and make a showing that the defendants' actions caused them not to question the propriety of the relationship between Gentile and Medstar. This allegation and showing does not adequately satisfy the requirements of fraudulent nondisclosure. Accordingly, the motion for summary judgment is granted as to the CT Page 12812 fourth count.
/s/ McDonald, J. McDONALD