******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# APPENDIX

## DAVID SQUILLANTE ET AL. *v.* CAPITAL REGION DEVELOPMENT AUTHORITY*

Superior Court, Judicial District of Hartford
File No. CV-16-6070594-S

Memorandum filed March 15, 2019

*Proceedings*

Memorandum of decision on defendant's motion for summary judgment. *Motion granted.*

*Matthew S. Carlone*, for the plaintiffs.

*Benjamin C. Jensen*, for the defendant.

*Opinion*

NOBLE, J.

Before the court is the motion of the defendant, Capital Region Development Authority (CRDA), for summary judgment as to the single remaining count for negligent misrepresentation on the grounds that (1) the statute of limitations has expired; and (2) there is no genuine issue of material fact as to the plaintiffs' inability to establish the elements of negligent misrepresentation. For the following reasons the court grants the motion for summary judgment on the former ground.

## FACTS

This action arises out of a series of communications between the plaintiff David Squillante and the defendant, CRDA, regarding potential financing for a housing development project located at 283-291 Asylum Street in Hartford.[1] This action was commenced by service of process on CRDA on July 26, 2016. The operative complaint is the three count amended complaint, dated November 14, 2017. In count three, which is the only count at issue, the plaintiffs allege a negligent misrepresentation claim.[2]

Specifically, the plaintiffs allege that, after several conversations, the parties executed a letter dated May 10, 2013 (letter), in which CRDA agreed to provide financing for the project if the plaintiffs complied with the terms and conditions outlined therein. One such condition allegedly misrepresented that the plaintiffs would be required to provide a guarantee "or" payment and performance bonds, when, at all times, CRDA actually required a guarantee "and" payment and performance bonds. In addition, the plaintiffs allege that, in communications subsequent to the letter, CRDA failed to provide certain necessary information, including form agreements, a closing checklist, and that it required a payment and performance bond for each of the plaintiffs' contractors from an insurance company licensed to do business in Connecticut with a " 'Best Rating of A-, VII.' " According to the plaintiffs: (1) CRDA had a duty to disclose these material facts within a commercially reasonable time after receipt of the letter; (2) they reasonably relied on CRDA's misrepresentation and omissions; (3) CRDA knew its representation was false and that the plaintiffs were acting in reliance on it; and (4) they suffered financial damages as a result.

On October 23, 2017, CRDA filed a motion for summary judgment. By order dated July 18, 2018, summary judgment was granted as to each count. Familiarity with the facts recited therein and the decision are presumed. See *Squillante* v. *Capital Region Development Authority*, Superior Court, judicial district of Hartford, Docket No. CV-16-6070594-S (July 18, 2018). With regard to count three, this court determined that the claim was time barred by the applicable statute of limitations.

General Statutes § 52-577. By order dated August 21, 2018, the entry of summary judgment as to count three was vacated on the basis that CRDA did not plead that the claim was time barred under § 52-577, but rather pleaded that it was time barred under General Statutes § 52-584. See *Mac's Car City, Inc.* v. *DeNigris*, 18 Conn. App. 525, 529, 559 A.2d 712 (error for court to grant summary judgment based on § 52-577 where statute not raised in pleadings), cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). CRDA amended its answer to include the defense that the action was time barred under § 52-577.

On October 11, 2018, CRDA filed a second motion for summary judgment as to count three on the grounds that the claim is time barred under § 52-577 and the plaintiffs cannot establish the elements of negligent misrepresentation. CRDA filed a memorandum of law in support of the motion and affidavits by Michael Freimuth, the executive director of CRDA, and Benjamin Jensen, the attorney representing CRDA in this action. On November 23, 2018, the plaintiffs filed an objection to the motion, which incorporated the facts set forth in their memorandum in opposition to CRDA's first motion for summary judgment, along with excerpts from the depositions of Mr. Freimuth, Mr. Squillante, and Richard Polivy, the plaintiffs' expert. CRDA subsequently filed a reply memorandum on November 30, 2018.

## STANDARD

The legal standard governing summary judgment motions is well settled. "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534-35, 51 A.3d 367 (2012).

"Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). "Typically, in the context of a motion for summary judgment based on a statute of limitations special defense, a defendant . . . meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . Then, if the plaintiff claims the benefit of a provision that operates to extend the limita-

tion period, the burden . . . shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . In these circumstances, it is incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact [as to the timeliness of the action] exists." (Citations omitted; internal quotation marks omitted). *Doe* v. *West Hartford*, 328 Conn. 172, 192, 177 A.3d 1128 (2018).

## DISCUSSION

CRDA argues that count three is time barred, pursuant to § 52-577, because the sole alleged misrepresentation appeared in a letter dated May 10, 2013, and the plaintiffs commenced the present action on July 26, 2016 (i.e., more than three years later). In response, the plaintiffs argue that the statute of limitations was tolled pursuant to the continuing course of conduct doctrine. Specifically, the plaintiffs claim that, in communications subsequent to the letter, including two e-mails that CRDA sent on June 10, 2013, and September 17, 2013, CRDA misrepresented the requisite conditions of financing and failed to disclose certain material facts, such as that the plaintiffs would need to procure a payment and performance bond for each contractor from an insurance company with a " 'Best Rating of A-, VII.' "

Section 52-577 provides: "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Because this is an occurrence statute, the limitation period runs from the date of the defendant's conduct, not the date when the plaintiff first discovers his injury. See *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 311, 94 A.3d 553 (2014). Moreover, as previously mentioned, "[w]hen the plaintiff asserts that the [limitation] period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 799, 99 A.3d 1145 (2014). The continuing course of conduct doctrine is one such equitable exception that, if applicable, will toll the statute of limitations until the course of conduct is completed. See *Flannery v. Singer Asset Finance Co., LLC*, supra, 311.

In evaluating the continuing course of conduct doctrine in the context of a summary judgment motion, the court must determine whether there is "a genuine issue of material fact with respect to whether the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." (Internal quotation marks omitted.) Id., 313. "Where . . . [the court has] upheld a

finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) Id., 312.

In the present case, the alleged initial wrong is that the May 10, 2013 letter from CRDA to the plaintiffs contained a misrepresentation and material omission related to the conditions of financing. To wit, it stated that the plaintiffs would be required to provide a guarantee "or" payment and performance bonds, when they would actually be required to provide a guarantee "and" payment and performance bonds for each contractor from an insurance company with a " 'Best Rating of A-, VII.' " As to the continuing duty prong, the plaintiffs argue that: (1) CRDA engaged in later wrongful conduct related to the initial wrong when, in subsequent communications between the parties, it allegedly made material misrepresentations concerning the conditions of financing, and failed to disclose, until December 4, 2013, that the plaintiffs would need to procure a payment and performance bond for each contractor from an insurance company with a " 'Best Rating of A-, VII' "; and (2) the relationship between the parties, the customs of the trade or other objective circumstances were such that the plaintiffs would reasonably expect CRDA to fully disclose the conditions of financing before December 4, 2013.

A. Later Wrongful Conduct Related to the Prior Act

With regard to the plaintiffs' later wrongful conduct argument, they specifically point to two e-mails that CRDA sent on June 10, 2013, and September 17, 2013. Because the former is still outside of the applicable three year statute of limitations, this court need not address its content. Moreover, the September 17, 2013 e-mail cannot serve as a basis for applying the continuing course of conduct doctrine because it does not reflect any wrongful conduct on the part of CRDA. That is, contrary to the plaintiffs' contention, the e-mail does not contain a material misrepresentation with regard to the financing conditions. In fact, the e-mail explicitly notifies the plaintiffs that it expects that the list of contracts/commitment letters that the plaintiffs identified as necessary to provide to CRDA before closing "will be expanded." Moreover, in another e-mail sent to the plaintiffs on the same day (i.e., September 17, 2013), CRDA attached a template of the formal assistance agreement mentioned in the May 10, 2013 letter. Section 3.9 of that template, titled "Payment and Performance Bond," put the plaintiffs on notice that "[DSJ45] shall provide CRDA with Payment and Performance Bonds with respect to each Contractor that enters into a Major Contract with [DSJ45] . . . ." (Entry No. 172, Freimuth Affidavit at pp. 12, 21).[3]

In addition, the plaintiffs have failed to demonstrate that CRDA violated a duty to disclose by not notifying the plaintiffs, until December 4, 2013, that the requisite payment and performance bonds for each contractor needed to be from an insurance company with a " 'Best Rating of A-, VII.' " 3 Restatement (Second), Torts, Liability for Nondisclosure § 551 (2) (e), p. 119 (1977) provides: "[o]ne party to a business transaction is under a duty . . . to disclose to the other before the transaction is consummated . . . facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." There are at least three reasons why this section does not apply to the present case and, therefore, cannot satisfy the second prong of the continuing course of conduct doctrine.

First, the rating of the insurance company that was to provide the payment and performance bonds cannot be fairly construed as a fact "basic to the transaction" because it is not a significant enough aspect of the transaction. See 3 Restatement (Second), supra, § 551 (2) (e), comment (j), p. 123 ("A basic fact is a fact that is assumed by the parties as a basis for the transaction itself. It is a fact that goes to the basis, or essence, of the transaction, and is an important part of . . . what is bargained for or dealt with. Other facts may serve as important and persuasive inducements to enter into the transaction, but not go to its essence. These facts may be material, but they are not basic.").

Second, the plaintiffs have failed to establish that there is a question of material fact that CRDA knew that the plaintiffs were about to enter into the transaction under a mistaken belief as to the bond requirement. As the plaintiffs' own exhibit submitted in opposition to the subject motion for summary judgment reveals, Mr. Freimuth made the assumption that the plaintiffs' construction budget included the price of obtaining an acceptable payment and performance bond. (Entry No. 178, Freimuth Dep. at pp. 67-68). See 3 Restatement (Second), supra, § 551 (2) (e), comment (k), p. 124 ("when the defendant has no reason to think that the plaintiff is acting under a misapprehension, there is no obligation to give aid to a bargaining antagonist . . . and if the plaintiff . . . does not have access to adequate information, the defendant is under no obligation to make good his deficiencies"); see also id., comment (*l*), p. 125 ("[i]n general, the cases in which the rule stated in Clause (e) has been applied have been those in which the advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling, in which the plaintiff is led by appearances

into a bargain that is a trap, of whose essence and substance he is unaware").

Third, according to the plain language of 3 Restatement (Second), supra, § 551 (2), the time frame for communicating information that requires disclosure under this section is "before the transaction is consummated." Id., 119. Here, as this court previously determined, an enforceable agreement was never consummated. As such, even assuming arguendo that CRDA had a duty to disclose all of the details of the requisite payment and performance bonds, they did so on December 4, 2013, which was before the transaction was consummated. Thus, in the September 17, 2013 e-mail that the plaintiffs point to, CRDA did not engage in any wrongful conduct related to the initial wrong that would warrant application of the continu[ing] course of conduct doctrine and toll the applicable statute of limitations.

### B. Special Relationship

The plaintiffs have also failed to establish that there was a special relationship between the parties that could give rise to a continuing duty on the part of CRDA to tell the plaintiffs, prior to December 4, 2013, that they would be required to provide payment and performance bonds for each contractor from an insurance company with a " 'Best Rating of A-, VII.' " With regard to the meaning of "special relationship" in the context of the continuing course of conduct doctrine, the Appellate Court has analyzed the question in terms of whether a fiduciary or confidential relationship existed between the parties. See *Carson* v. *Allianz Life Ins. Co. of North America*, 184 Conn. App. 318, 331-32, 194 A.3d 1214 (2018), cert. denied, 331 Conn. 924, 207 A.3d 27 (2019). "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . [N]ot all business relationships implicate the duty of a fiduciary. . . . In particular instances, certain relationships, as a matter of law, do not impose upon either party the duty of a fiduciary." (Internal quotation marks omitted.) Id., 331, quoting *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 640, 804 A.2d 180 (2002).

In *Carson* v. *Allianz Life Ins. Co. of North America*, supra, 184 Conn. App. 331-32, the court held that the continuing course of conduct doctrine did not apply to toll the applicable statute of limitations because "[t]he plaintiff failed to offer contrary authority that her relationship with the defendant [life insurance company] was anything more than a commercial transaction. Nor did she proffer evidence of a unique degree of trust and confidence between the plaintiff and the defendant akin to a fiduciary or special relationship." Similarly, here, the facts indicate that the relationship between the par-

ties was commercial in nature, in that they were negotiating a business transaction, at arm's length, whereby CRDA would loan the plaintiffs a portion of the financing necessary for their housing development project. Moreover, the plaintiffs have not provided evidence of a unique degree of trust and confidence between the parties akin to a fiduciary relationship, nor that CRDA was under a duty to represent the plaintiffs' interests.[4]

Furthermore, the Supreme Court in this state has made clear that a buyer-seller relationship is not a "special relationship" that gives rise to a legal duty to disclose any deception related to the transaction. See *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 312 Conn. 313 ("the defendant and the plaintiff stood in relation of buyer and seller and, as such, there was no special relationship between them that imposed upon the defendant a duty to disclose to the plaintiff any deception attendant to the transaction"); see also *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 210, 541 A.2d 472 (1988) ("We are aware of no authority holding that the perpetrator of a fraud involving merely a vendor-vendee relationship has a legal duty to disclose his deceit after its occurrence and that the breach of that duty will toll the statute of limitations. Such a [contractual] relationship does not give rise to obligations equivalent to those of a fiduciary."); *Harte Nissan, Inc.* v. *Market Scan Information*, Docket No. CV-99-0268959-S, 2003 WL 352948, *6 (Conn. Super. January 17, 2003) ("the act of entering into an agreement for the purchase of computer equipment and software does not, by itself, create the type of special relationship necessary for the [continuing course of conduct] doctrine to apply"). Likewise, the Supreme Court has held that parties negotiating an acquisition and financing agreement do not have a "special relationship" that would give rise to a fiduciary duty to timely disclose all information regarding the transaction. *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 85-86, 873 A.2d 929 (2005). These precedents further support the conclusion that there was no special relationship between the parties here that could give rise to a continuing duty to disclose all information pertaining to the payment and performance bond prior to December 4, 2013.

Thus, the plaintiffs have failed to establish a genuine issue of material fact with regard to the applicability of the continuing course of conduct doctrine and the court concludes that the action is barred by § 52-577. Consequently, in light of this conclusion, the substantive issues concerning the count need not be addressed by this court.

For the foregoing reasons the court grants the defendant's motion for summary judgment.

* Affirmed.    Conn. App.    ,    A.3d    (2021).

[1] DSJ45, LLC, a limited liability company of which Mr. Squillante is the sole member, is also a plaintiff in this case. Mr. Squillante and DSJ45, LLC, will be referred to collectively as the plaintiffs.

[2] Counts one and two allege claims of breach of contract and promissory estoppel, respectively.

[3] The fact that the template did not disclose that the requisite payment and performance bonds would need to be from an insurance company with a " 'Best Rating of A-, VII' " does not constitute a fraudulent nondisclosure because there is no indication in the record that CRDA knew of this fact and deliberately withheld it from the plaintiffs, with the intention or expectation to cause a mistake in order to induce the plaintiffs into the transaction. See *Wedig* v. *Brinster*, 1 Conn. App. 123, 130-31, 469 A.2d 783 (1983) ("[O]nce a vendor [assumes] to speak, he must make a full and fair disclosure as to the matters about which he assumes to speak. He must then avoid a deliberate nondisclosure. . . . [T]he nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." (Citations omitted; internal quotation marks omitted.)), cert. denied, 192 Conn. 803, 472 A.2d 1284 (1984).

[4] To the extent that the plaintiffs argue that the parties' relationship was akin to that of partners, they have not provided authority for the proposition, nor sufficient evidence to conclude that the parties had entered an informal partnership, known as a joint venture. See *Censor* v. *ASC Technologies of Connecticut, LLC*, 900 F. Supp. 2d 181, 201 (D. Conn. 2012) ("[t]o constitute a joint venture, courts in Connecticut prescribe a five part test that requires that (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit, (2) an agreement must evidence their intent to be joint venturers, (3) each must contribute property, financing, skill, knowledge or effort, (4) each must have some degree of joint control over the venture, and (5) there must be a provision for the sharing of both profits and losses").